KIRSTEN A. MILTON, ESQ.
Nevada Bar No. 14401
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Email: kirsten.milton@jacksonlewis.com

*Attorneys for Defendants*
*GNL, LLC f/k/a /GNL CORP.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JULIE LESTER, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>GNL, CORP.; GNL, LLC; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |

Pursuant to 28 U.S.C. § 1332(a), Defendant GNL, LLC (f/k/a GNL, CORP.) ("Defendants") hereby notifies the Court of the removal of *JULIE LESTER, on behalf of herself and all other similarly situated individuals v. GNL, CORP., GNL, LLC, and DOES 1 through 50, inclusive*, Case No. A-24-893207-C, which was filed in the Eighth Judicial District Court of Clark County, Nevada.[1]  In support of said removal, Defendants state as follows:

1.  On May 13, 2024, an action was commenced in the Eighth Judicial District Court of Clark County, Nevada, entitled *JULIE LESTER, on behalf of herself and all other similarly situated individuals v. GNL, CORP., GNL, LLC, and DOES 1 through 50, inclusive*.  A copy of the Complaint is attached hereto as **Exhibit 1**.

2.  On June 3, 2024, Defendant signed a Waiver of Service accepting service of the Complaint and a Summons issued by the State Court on or about May 13, 2024.  A copy of the

---

[1] As noted, GNL, LLC was formally known as GNL, CORP. The corporation was converted to a Limited Liability Company as of 2018.  There are not two separate Defendants.

Summons is attached hereto as **Exhibit 2** and a copy of the Waiver of Service of Summons is attached as **Exhibit 3.**

3. No further proceedings have been had in this matter in the State Court.

4. This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it has been filed within 30 days of May 23, 2024, the first date on which Defendants received any pleadings setting forth the claims for relief upon which the civil action is based.

5. This action is a civil action of which the Court has original jurisdiction pursuant to 28 U.S.C. § 1332, diversity jurisdiction.

6. Specifically, the Class Action Fairness Act of 2005 ("CAFA") grants district courts original subject matter jurisdiction over any civil action involving a proposed class of at least 100 members "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); 28 U.S.C. § 1332(d)(5)(B). All of the elements required to establish original subject matter jurisdiction over this action under CAFA are satisfied.

7. **First**, Plaintiff brings this class action under Rule 23 of the Nevada Rules of Civil Procedure on behalf of herself and a "Class" of "[a]ll non-exempt hourly paid employees employed by Defendants in the State of Nevada during the relevant time period alleged herein," as well as a "Subclass" of "[a]ll Class members who are former employees of Defendants." Compl. ¶ 26.

8. **Second**, as alleged in the Complaint, the purported Class and Subclass has more than 100 members. Compl. ¶ 27; *see also* copy of the Declaration of Laura Jasso ("Jasso Decl.") is attached as **Exhibit 4**, ¶ 7. Indeed, based on the allegations in Plaintiff's Complaint, between April 30, 2022 and May 11, 2024, the number of putative Class and Subclass members is approximately 1,033. Jasso Decl. ¶ 7. Thus, Defendants have shown by a preponderance of the evidence that there is a potential class of at least 100 members.

9. **Third**, of those approximately 1,033 non-exempt, hourly paid employees, approximately 600 are former employees and potentially owed money due to rounding. *Id.* ¶ 8.

Additionally, of the approximately 1,033, more than 780 – i.e., approximately 76% – have provided last known addresses in Arizona. *Id*. Because those individuals reside in Arizona, they are citizens of the State of Arizona.

10. Defendant GNL, LLC, formerly known as GNL, Corp., Compl. ¶ 6, is a Nevada limited liability company that operates the Golden Nugget Laughlin Hotel & Casino located at 2300 South Casino Drive in Laughlin, Nevada 89029 (the "Golden Nugget"). Jasso Decl. ¶ 5. The Golden Nugget is located less than five miles from the Nevada/Arizona border. *Id.*

11. CAFA has a minimal diversity requirement. To meet the "minimal diversity" required by CAFA, any member of a class of plaintiffs must be a citizen of a state different from any defendant. 28 U.S.C. § 1332(d). Defendants are citizens of the State of Nevada. Compl. ¶ 6; Jasso Decl. ¶¶ 5, 9; *see* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."). Here, more than 76% of the putative class members are citizens of a different state from Defendants – i.e., Arizona. *See* Jasso Dec. ¶ 7. Accordingly, the minimal diversity required under CAFA is established in this case.

12. The Complaint also names as Defendants DOES 1 through 50 ("DOE Defendants"). The 50 DOE Defendants named in the Complaint are not considered in assessing diversity. *See, e.g.*, *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 – 91 (9th Cir. 1998) ("28 U.S.C. §1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal. As such, the district court was correct in only considering the domicile of the named defendants."). Accordingly, the citizenship of the alleged DOE Defendants does not impact the diversity analysis for removal. Regardless, and to the best of Defendants' knowledge, no DOE defendants have been served with the Complaint in the lawsuit. Jasso Decl. ¶ 11.

13. **Fourth,** the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. While Defendants are not required to prove an actual damage amount to establish the amount in controversy exceeds $5,000,000, they must provide the Court with factual evidence from which the Court can conclude whether the jurisdictional amount is met. "Under

the preponderance standard, the jurisdictional fact . . . is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir. 2012); *Bell v. Hershey Co.*, 557 F.3d 953, 959 (same).

14. Here, Defendants provide the Court with factual evidence well beyond "mere speculation or conjecture" from which the Court can conclude the amount in controversy clearly exceeds $5,000,000. According to the Complaint, Plaintiff worked at the Golden Nugget's Laughlin, Nevada location "from on or about May 10, 2021, to on or about March 7, 2023." Compl. ¶¶ 5, 8. During her tenure, she alleges she "earned between $12.00 and $16.00 per hour" and "regularly worked, at least 5 shifts per week, 8 hours per shift, and 40 hours per workweek." *Id*. ¶¶ 13, 14.

15. Plaintiff alleges "Defendants required Plaintiff and all other call center employees to record their work hours by clocking-in/out of a timekeeping system." Compl. ¶ 15. The Complaint further alleges that "Defendants did not pay Plaintiff and call center employees based on their clock-in/out "punch" time. Rather, Defendants utilized a rounding system whereby they would round Plaintiff and call center employees' time entries to the nearest 15-minute increment ('Rounding Policy')." *Id*. ¶ 16. As a result, Plaintiff alleges "Defendants underpaid Plaintiff approximately 28.5 hours of compensation over the course of her employment." *Id*. ¶ 18.

16. Taking Plaintiff's allegations as true for purposes of removal only, Plaintiff worked approximately 1,710 minutes of time (28.5 hours x 60 minutes) for which she claims she was not compensated. Between April 30, 2022 and March 8, 2023 – i.e., Plaintiff's termination date – Plaintiff worked approximately 44 weeks. Therefore, if, during this period of time, Plaintiff worked 1,170 minutes for which she believes she was not compensated, by Plaintiff's own allegations, she worked approximately 38.86 minutes per week (five shifts at eight hours per shift, Compl. ¶¶ 13, 14), or 7.72 minutes per shift, for which she was not compensated.

17. Ultimately, Plaintiff alleges she is owed "$503.03" or $17.65 per hour (28.5 hours/$503.03 in alleged unpaid wages and interest) as a result of "Defendant's unlawful Rounding Policy." Compl. ¶ 18.

18. As such, for purposes of removal only, and based solely on Plaintiff's allegations in the Complaint, Defendants will assume each putative class member worked six minutes off the clock each shift (an amount nearly two minutes lower than the average number of minutes Plaintiff claims she worked each shift, but for which she was not compensated, which is one of the bases for the amount in controversy) and should have been paid on average $17.65 per hour.[2] Compl. ¶¶ 18, 42, 43.

19. Between April 30, 2022 and May 11, 2024, members of the Class and Subclass worked approximately 191,493 shifts. Jasso Decl. ¶ 10. Adding six minutes on to each shift worked by the members of Plaintiff's proposed Class and Subclass results in an additional 1,148,958 minutes or 19,149.30 hours (1,148,958 minutes/60) of alleged unpaid work. *Id*. If those hours of alleged unpaid work are calculated at a regular rate of $17.65 per hour, the resulting amount of alleged unpaid wages is approximately $337,985.15 (19,149.30 hours x $17.65 per hour).

20. Additionally, in her Complaint, "Plaintiff demands thirty (30) days wages under NRS 608.140 and 608.040, and an additional thirty (30) days wages under NRS 608.140 and 608.050, for Plaintiff and Subclass Members, together with attorneys' fees, costs, and interest as provided by law." Compl. ¶ 59.

21. Between April 30, 2022 and May 11, 2024, of the 1,033 non-exempt, hourly paid employees who worked for Defendants, approximately 600 are former employees. Jasso Decl. at ¶ 8. While Defendants dispute that any former employee is entitled 60 days of penalties, for purposes of removal only, Plaintiff's claims would result in approximately $5,083,200.00 in waiting time penalties (($17.65 per hour x 8 hours x 60 days) x (600 former employees)). Thus, the amount in controversy based on "Defendant's [alleged] unlawful Rounding Policy," Compl. ¶ 18, is approximately $5,421,185.15 ($337,985.15 in unpaid wages + $5,083,200.00 in waiting

---

[2] Notably, this alleged hourly rate could be significantly higher for a number of eligible employees if the additional alleged unpaid time resulted in the employee working over eight hours in a workday or 40 hours in a workweek and thus, being entitled to pay at a one and a half times his or her regular rate. Compl. ¶ 51. For example, overtime eligible employees earning a regular rate of $17.65 would be entitled to an overtime rate of $26.48, which only increases the potential damages available.

time penalties) in alleged unpaid wages and penalties, which clearly is more than $5,000,000 and Defendants have satisfied this final CAFA element.

22. **Fifth**, assuming *arguendo* that somehow based on alleged unpaid wages and penalties alone, Defendants had not met the $5,000,000 threshold (they have), the Ninth Circuit has definitively held that, in class actions, attorneys' fees are included in the amount in controversy. *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (citing *Gibson v. Chrysler Corp.*, 261 F.3d 927, 942-43 (9th Cir. 2001)); *see Fritsch v. Swift Transp. Co. of Ariz.*, LLC, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."). Plaintiff has demanded attorney's fees, which are recoverable under Nevada law. Compl., WHERFORE, ¶ 7.

23. "When including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate." *Garcia v. Lifetime Brands, Inc.*, EDCV151924JLSSPX, 2016 U.S. Dist. LEXIS 2576, at *4 (C.D. Cal. Jan. 7, 2016) (citations omitted). The 25% benchmark rate is also used by courts to cross-check award calculations derived from the lodestar method to guard against unreasonable awards. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011).

24. Attorneys' fees in this case could be at least $1,355,296.29 ($5,421,185.15 x 25%).

25. Thus, the Court "could [further] legally conclude" that the amount in controversy, including attorneys' fees, here, is at least $6,776,481.43 ($5,421,185.15 in unpaid wages and penalties + $1,355,296.29 attorneys' fees) – well above $5,000,000.

26. Moreover, Defendants' estimate of the amount in controversy likely *underestimates* the potential amount in controversy for three reasons: (1) Defendants calculated alleged unpaid wages based on the average regular hourly rate as plead in Plaintiff's Complaint, rather than an overtime rate of 1.5 times the regular rate; (2) Defendants assumed putative class members worked only six minutes of unpaid time each shift, whereas, Plaintiff alleged she worked over seven minutes of unpaid time each shift; and (3) the amount-in-controversy is solely based on Defendants' alleged "unlawful Rounding Policy" and does not include any alleged

estimated damages based on Plaintiff's additional claim that Defendants failed to include "commission" payments in employees' "regular rate of pay for determining the amount of overtime to be paid," Compl. ¶ 24.  While Defendants dispute that Plaintiff will ultimately prove she and a class of individuals are entitled to any additional compensation, there can be no doubt that Plaintiff's Complaint seeks damages exceeding $5,000,000.

27. In short, because Defendants have established all of the elements required to establish original subject matter jurisdiction over this action under CAFA, removal is proper.

28. A true and correct copy of this Notice of Removal, without Exhibit 1 attached, will be contemporaneously filed with the Clark County District Court.

29. WHEREFORE, Defendants pray that the above-referenced action now pending in the Eighth Judicial District Court of Clark County, Nevada be removed therefrom to this Court.

Dated this 24th day of June, 2024.

JACKSON LEWIS P.C.

*/s/ Kirsten A. Milton*
Kirsten A. Milton, Bar No. 14401
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 24th day of June, 2024, I caused to be served via this Court's electronic filing system, a true and correct copy of the above foregoing **NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT** properly addressed to the following:

Joshua D. Buck
Leah L. Jones
**THIERMAN BUCK LLP**
325 West Liberty Street
Reno, Nevada 89501

*Attorneys for Plaintiff and the Putative Classes*

/s/ Kelley Chandler
Employee of Jackson Lewis P.C.