Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
**THIERMAN BUCK**
325 W. Liberty Street
Reno, Nevada 89501
Tel. (775) 284-1500
Fax (775) 703-5027

*Attorneys for Plaintiff and all others similarly situated*

Kirsten A. Milton, Nev. Bar No. 14401
kirsten.milton@jacksonlewis.com
**JACKSON LEWIS, P.C.**
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Tel. (702) 921-2460

*Attorneys for Defendants GNL, LLC f/k/a GNL CORP.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JULIE LESTER, on behalf of herself and all other similarly situated individuals,

Plaintiff,

vs.

GNL, CORP.; GNL, LLC; and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:24-cv-01154-CDS-NJK

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, Julie Lester ("Plaintiff") on behalf of herself and all other similarly situated individuals, and Defendant, GNL, LLC (f/k/a GNL Corp.) ("Defendant", collectively the "Parties") hereby move this honorable Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order:

(1)     Preliminarily approving the class action settlement between Plaintiff, Defendant, and unnamed Doe entities;

(2)     Preliminarily certifying the Rule 23 Class for purposes of settlement; and

(3)     Approving the manner and form of Notice and the proposed distribution plan to class members.

This motion is based the following Memorandum of Points and Authorities in support thereof, the settlement agreement and exhibits thereto attached and filed herewith as Exhibit 1 to the Declaration of Leah L. Jones, Esq. submitted in support of this Motion, all pleadings and papers on file in this action, and such other matters as the Court may consider.

The Parties file the Joint Motion for Preliminary Approval of the proposed Settlement hereto, which requires Court approval because Class Members will release their Claims if they do not exclude themselves from the Settlement as set forth in the Settlement Agreement and explained in the proposed Notice.

Dated: August 11, 2025

/s/    *Leah L. Jones*
Joshua D. Buck
Leah L. Jones

**THIERMAN BUCK**

*Attorneys for Plaintiff and all others
similarly situated.*

/s/  *Kirsten A. Milton*
Kirsten A. Milton, Nev. Bar No. 14401

**JACKSON LEWIS, P.C.**

*Attorney for Defendants GNL, LLC f/k/a GNL
CORP.*

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND OVERVIEW OF SETTLEMENT TERMS

Plaintiff Julie Lester and GNL, LLC (f/k/a GNL Corp.) (with Plaintiff and Defendant collectively referred to as the "Parties") seek preliminary approval of this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Parties retained the services of Hon. David Wall (Ret.) to conduct a mediation and provide a frank assessment of each Party's case. Following extensive discussions regarding the strengths and weaknesses of their respective positions, the Parties reached a proposed class action settlement through arms-length direct negotiations.

The Parties have come to a settlement in this action, for a total Maximum Settlement Amount of $1,375,000.00 to be paid to class members on a claims-made basis. (*See* Exhibit 1, "Settlement Agreement" §§ 1.n, 12(c)-(e).)[1]

All of the terms of the Settlement have been agreed upon as follows:

- Approximately $881,666.67 in estimated settlement funds to the Class;[2]

- Approximately $10,000.00 in Claims Administrator's reasonable fees and expenses approved by the Court;

- No more than $15,000.00 as Enhancement Award to Plaintiff Julie Lester;

- No more than $458,333.33 in attorneys' fees; and

- Approximately $10,000.00 in costs.

(Settlement § 12(c) – (d), (g), § 14 ; Jones Dec. ¶ 14.)

---

[1] This Motion incorporates by reference the definitions in the Settlement Agreement between Plaintiff and Defendant, and terms used herein shall have the same meaning as set forth in the Settlement Agreement, hereinafter "Settlement" or "Settlement Agreement" attached as Exhibit 1 to the Declaration of Leah L. Jones, hereinafter "Jones Dec." ¶ 4. Plaintiff will file her Declaration and the fully executed Settlement Agreement as an Addendum once all Parties have signed on or before August 15, 2025.

[2] The dollar amounts provided are approximations based on the pending approval by this Court of Class Counsel's fees and costs, the Claims Administrator's fees, as well as the Court's approval of the Class Representative's Enhancement Award. (Jones Dec. ¶ 4.)

To promote a more effective administration of Notice and to accommodate the Parties' individual needs, the Parties have worked together to obtain this Court's preliminary approval of settlement as expeditiously as possible.

The remainder of the Maximum Settlement Amount of $1,375,000.00 (*id.,* §1, n) after deduction of the approved attorneys' fees and costs for Class Counsel, the approved Enhancement Award to the Class Representative, and the approved claims administration fees and expenses is the Net Settlement Amount.  (*Id.,* §1.o.) The Net Settlement Amount will be paid to the Class Members based on the formula established in Paragraphs § 12(c)-(d) of the Settlement Agreement, based primarily on the number of shifts worked by Class Members. (*Id.,* § 12(d).) Defendant's share of applicable taxes and withholdings will be paid out of any reversionary amount of the Net Settlement Amount. (*Id.*) If Defendant's share of applicable taxes and withholdings exceeds the amount of Defendant's reversion of the Net Settlement, Defendant's reversion will be none, and any such employer taxes or withholding will be paid from the Net Settlement Amount instead of Defendant's reversion.  (*Ibid.*)

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On May 13, 2024, Plaintiff Julie Lester filed a putative class action complaint in the Eighth Judicial District Court, Clark County, Nevada (Case No. A-24-893207-C), titled GNL, Corp.; GNL, LLC as Defendants. Plaintiff alleged four causes of action: (1) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250, *et seq.*; (2) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016; (3) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; and (4) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050. Defendant filed a Notice of Removal to this Court on June 24, 2024. (ECF No. 1.) On July 22, 2024, Defendant filed an Answer to Plaintiff's Class Action Complaint. (ECF No. 12.) On September 16, 2024, a Discovery Plan and Scheduling Order was entered. (ECF No. 20.)

The Parties engaged in extensive discussions regarding their respective positions, and the information and data needed to properly evaluate the merits of the claims alleged. (Jones Dec., ¶ 12.) Defendant's counsel provided Plaintiff's counsel with sample class member timekeeping and

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

payroll data. (*Id*.) Thereafter, the Parties retained the services of Hon. David Wall (Ret.) to conduct a mediation and provide a frank assessment of each Party's case. (*Ibid*.) Following extensive discussions regarding the strengths and weaknesses of their respective positions, the Parties reached a proposed class action settlement through arms-length direct negotiations. (*Ibid.*)

On April 18, 2025, the Parties filed a Joint Notice of Settlement. (ECF No. 24.) The Parties have requested three extensions of time to finalize the Settlement Agreement (ECF Nos. 25, 27 and 29), and each extension has been granted. (ECF Nos. 26, 28, and 30.)

## III.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant monetary recovery on behalf of the Class and releases from the Class only those claims arising out of the facts, circumstances, and occurrences alleged in the Complaint. (Settlement §§ 21, 22.) Furthermore, the Settlement sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement. (*Id.* § 16(a)-(f).)

### A.    The Recovery.

The Parties have come to a settlement in this action for a total maximum settlement amount of $1,375,000.00 to be paid to Class Members on a claims-made basis. (Settlement, §12(c).) The Settlement Amount has a reversionary element, meaning that any unclaimed amounts will be returned to Defendant as set forth in the Settlement after deductions of employer side taxes. (Settlement, §12(c)-(d).)

All of the terms of the Settlement have been agreed upon as follows:

- Approximately $881,666.67 in estimated settlement funds to the Class;
- Approximately $10,000.00 in Claims Administrator's reasonable fees and expenses approved by the Court;
- No more than $15,000.00 as Enhancement Award to Plaintiff Julie Lester;
- No more than $458,333.33 in attorneys' fees; and
- Approximately, $10,000.00 in costs.

(Settlement § 12(c) – (d), (g), § 14; Jones Dec. ¶ 14.)

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

Subject to Court approval, Defendant agrees to pay a Maximum Settlement Amount of no more than $1,375,000.00 to cover all payments arising out of this Settlement. (Settlement §§ 1.n, 12(c).) Settlement Class Members who submit a timely and valid Claim Form shall be eligible to recover a Settlement Award of the Net Settlement Amount, in accordance with a plan of allocation based primarily on the number of shifts worked by Class Members. (*Id.* § 12(d).)

The Settlement provides that 50% of each payment to a Class Member shall constitute payment of wage claims such that they shall be subject to tax withholding and reported on an IRS W-2 Form, and 50% of each payment to a Class Member will be allocated to settlement of claims for non-wage income and constitute remuneration for damages separate and distinct from lost wages which shall not be subject to tax withholding and will be reported on an IRS 1099 Form, if required. (*Id.* § 12(e).) The Claims Administrator shall be responsible for issuing appropriate tax forms, if any, to Class Members, consistent with the Settlement Agreement. (*Id.*) Each Class Member assumes full responsibility and liability for any employee taxes owed on their settlement payment. (*Ibid.*)

### B.    The Release.

The Settlement provides that, in exchange for the good and valuable consideration set forth therein, all Class Members shall waive any and all wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description that are alleged or could have been alleged in the Action, whether known or unknown, against Defendant and the Released Parties based on the facts alleged in the Action. (*Id.* §§ 21-22.) Named Plaintiff Julie Lester shall waive any and all claims against Defendant as of the date of the order granting preliminary approval of the settlement. (*Id.* § 21.)

### C.    The Settlement Mechanism.

The Parties have agreed to use a third-party Claims Administrator, CPT Group, to administer the claims process. (*Id.* § 1(c).) The Settlement provides for the Claims Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. (*Id.* §§ 13, 16.) A copy of the Notice to be approved by the Court and sent to class members is attached as Exhibit D to the Settlement. A copy of the Claim Form to be approved by the Court

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

and sent to class members is attached as Exhibit A to the Settlement. To request exclusion from the Settlement, a Class Member must opt out of the Settlement by submitting a written request electing to exclude himself or herself from the Settlement as set forth in the Settlement Agreement and the Notice. (*Id.* § 19.) Following mailing of the Notice, class members then have thirty (30) days to submit a claim form and participate in the Settlement, request to be excluded from the Settlement, or comment on or object to the Settlement. (*Id.* §§ 16(d), 19-20.)

The Settlement further provides that, following the notice period, the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement. (*Id.* § 16(f).) The Notice advises Class Members about the fairness hearing and their opportunity to attend the hearing and make their views known. (*Id.,* Exhibit D, Notice.) At the fairness hearing, the Parties will address any issues raised by Class Members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

The Parties agree that, as a Rule 23 class action, this matter is subject to the notice requirements set forth in the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715(b). Accordingly, pursuant to 28 U.S.C. § 1715(b), not later than ten (10) business days after filing the instant Motion, the Claims Administrator shall serve upon the appropriate State official of each State in which a class member resides, and the appropriate Federal official, a notice of the Settlement consistent with the requirements enumerated by 28 U.S.C. § 1715(b)(1)–(8). Furthermore, pursuant to 28 U.S.C. § 1715(d), the Court may not issue an order granting final approval of the Settlement earlier than ninety (90) days after service of the notice of Settlement upon the appropriate State and Federal official. Thus, the Parties respectfully request that the Court refrain from issuing its order granting final approval of the Settlement until 100 days after the filing of this Motion.

## IV. THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval. In general, settlement of class actions is favored as a matter of "strong judicial

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto*, 252 F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. (*Id.* (citations omitted); *see also Manual for Complex Litig. (Fourth)* § 21.632 (2004) ("Manual for Complex Litigation") (summarizing "preliminary fairness review"). Stage two is the fairness hearing, which is set for a time after notice has been provided to the class and class members have had an opportunity to submit claims, comments, or objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. (*Id.* at 659 (citations omitted)).

Here, because the Parties' Joint Motion initiates the first stage of the Court's evaluation of the Settlement, the Parties submit that: (A) the Class should be certified for settlement purposes; (B) the Settlement should be preliminary deemed fair, reasonable, and adequate; and (C) notice to Settlement Class Members should be sent out as set forth in the Settlement.

### A.    The Proposed Settlement Class.

Pursuant to the Settlement, the Parties seek to certify the following class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure and the FLSA:

> All non-exempt hourly paid employees employed by GNL, LLC, formerly known as GNL, Corp., in the state of Nevada at any time since May 13, 2021, up to and including the date the Court grants preliminary approval of this Settlement.

(Settlement, § 5.)

### B.    The Proposed Settlement Should be Preliminarily Approved.

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp. v. Denda,* 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

time and limit expensive litigation."). It is within the broad discretion of the trial court to approve a class action settlement. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The approval of a class action settlement takes place in two stages: preliminary approval and final approval. *West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). Preliminary approval of a class action settlement and notice to the class is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. FRCP 23(e)(2); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 619 (N.D. Cal. 2014) (citing *Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See In Re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litig. Fourth § 21.632 (2004)). During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1057 (9th Cir. 2008); *Alaniz v. California Processing, Inc.,* 73 F.R.D. 269, 273 (C.D. Cal. 1976).

In this matter, an expeditious decision on the papers would promote a fair, effective, and efficient administration of Notice and is in line with the past practice of this Court. While a

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

hearing is required for final approval of a potential Settlement, no such hearing is required at the earlier preliminary approval stage. *See, e.g.*, *Nelson v. Wal-Mart Assocs., Inc.*, Case No. 3:21-cv-00066-MMD-CLB (August 15, 2023 Order Granting Motion for Preliminary Approval of Class and Collective Action Settlement); *DeWeese v. ITS National, LLC*, Case No. 3:18-cv-00375-MMD-WGC (March 20, 2019 Order Granting Preliminary Approval of Class Action Settlement) (attached to the Jones Dec. at ¶ 26, as Exhibits 3 and 4, respectively). As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

### 1.    The Settlement Falls Within the Range of Possible Approval Given the Strengths and Weaknesses of the Claims and Defenses.

To grant preliminary approval, this Court must decide that the Settlement falls within the approved range for preliminary approval. *Zepeda v. Paypal, Inc.*, No. C 10-2500 SBA, 2015 WL 6746913 (N.D. Cal. Nov. 15, 2015), at *4; *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2012 WL 5838198, (N.D. Cal. Aug. 17, 2012) at *1 n.1; *In re Tableware Antitrust Litig.*, 484 F. at 1079. To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]" *Tableware*, 484 F.Supp.2d at 1080. In determining whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon*, 150 F.3d at 1026.

Here, the Settlement represents a significant recovery on behalf of the Class given the risks associated with this case. (Jones Dec. ¶¶ 16-17.) Class Counsel represents that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the claims against Defendant, including, but not limited to: (i) speaking with numerous opt-in plaintiffs and putative class members; (ii) reviewing relevant documents; (iii) analyzing time and pay data provided by Defendant for a representative sample of the overall class; (iv) researching the applicable law and the potential defenses; (v) developing the arguments

for class certification and other significant issues; and (vi) advocating for the rights of the putative class. (*Id.*) Based on their independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and that it is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, trial risk, and appellate risk. (*Id.*)

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged and contends that, but for the Settlement, this Action is not appropriate for class certification pursuant to FRCP 23, or any other state rule, statute, law, or provision. (Settlement § 6.) Defendant continues to assert that the Action fails to meet the prerequisites necessary for class action treatment under applicable law. (*Id.*) Defendant further asserts that it has complied with all applicable provisions of state statutory and common law. (*Id.*) Defendant further states that, despite its good-faith belief that it is not liable for any of the alleged claims, and despite its good-faith belief that certification is not appropriate, Defendant will not oppose the District Court's certification of the Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement. (*Id.*) Other than for purposes of this Settlement, Defendant does not waive its objections to certification of the Settlement Class, or any other class, in this Action.

Thus, the Settlement represents a compromise between experienced counsel for Plaintiffs and Defendant based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position. (Settlement, § 3; Jones Dec. ¶ 18.)

### 2. All four criteria of FRCP 23(a) are met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the settlement Class consists of approximately 1,300-plus individuals. (Jones Decl., ¶ 17.) Plainly, the numerosity criterion is satisfied.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.*** The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.,* 252 F.R.D. at 660

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

(citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Plaintiff and Class Members assert common factual and legal questions, which include whether Class Members were compensated for all hours worked at the appropriate legal rate pursuant to state law, and whether Class Members who are former employees were paid all their wages due and owing at the time of their termination. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 607 (C.D. Cal. 2005). Based on these common issues, this criterion is met. For purposes of approving this Settlement only, Defendant does not oppose Plaintiffs' assertion that sufficient commonality exists.

**FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.** Like commonality, the typicality standard is applied "permissive[ly]." *See Staton*, 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" (*Id.*)

Here, for purposes of approving this Settlement only, the claims or defenses of class representative Plaintiff Julie Lester are typical of the claims or defenses of the class because all Class Members were classified as non-exempt hourly paid employees and former employees who worked for Defendant in Nevada at any time from May 13, 2021, through the date the Court grants preliminary approval. (Settlement § 1(g).) Accordingly, for purposes of Settlement only, Named Plaintiff and the Class Representative, Julie Lester, has asserted the same alleged wage and hour violations as all other members of the Class. Thus, her claims are typical of those of the Class.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

***FRCP 23(a)(4): The representative party will fairly and adequately protect the interests of the class.*** Courts have interpreted this requirement as posing two questions: (1) whether the named plaintiff or her counsel has any conflicts of interest with other class members, and (2) whether the named plaintiff and her counsel will vigorously prosecute the action on behalf of the class. (*See Hanlon* and other cases.) Here, the current Plaintiff and Class Representative shares with absent Class Members an interest in recovering compensation that Defendant allegedly denied them due to Defendant's alleged failure to include all hours worked at the appropriate legal rate pursuant to state law. And Plaintiff's counsel has extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached only after arm's-length direct settlement discussions. (Jones Dec. ¶ 27.)

### 3.    The criteria of FRCP 23(b)(3) are met.

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3).

***The predominance requirement is met****.* The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001), *cert. denied*, 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this Action arises from Defendant's alleged uniform wage-and-hour and overtime policies strongly supports a finding that common issues of law and fact predominate, such that this requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (C.A.9 2009).

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

***The superiority requirement is met.*** Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. 2005). The Parties submit that the situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class member would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.*, 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)). In such a situation, the superiority requirement is "easily satisfied." (*Id.*) Because, based on the allegations in the Complaint, the sums per employee are relatively small, the Plaintiff's litigation costs are high, and Defendant's alleged conduct is uniform, a class action is superior to filing nearly 1,500 individual actions concerning the same facts and legal issues.

### C.    The Proposed Settlement Is Fair, Reasonable, and Adequate.

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (FRCP 23(e)(2)), summarizing the inquiry as follows: Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims, as well as the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. (*Id.* § 21.62 at 315.)

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

At the preliminary approval stage, courts do not make a final determination of the fairness, reasonableness, and adequacy of the proposed settlement. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich*, 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litig.* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. (*Id.* § 21.633 at 321.) The Parties submit that all inquiries are preliminarily satisfied as follows:

### 1. The Settlement Is Fair.

**Fairness of distribution among Class Members.** A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (Internal citation omitted.). Here, all Class Members will receive a proportionate share which will be determined by the Claims Administrator on a per-shift basis. (Settlement, § 12(d).) The number of qualifying shifts worked by Class Members during the Class Period will be determined by reference to Defendant's records, which will be presumed to be correct. (*Id.*) Based, on the qualifying shifts, the Claims Administrator shall assign to each Class Member a "Settlement Ratio," which shall be a fractional number comprised of (a) that Class Member's total number of qualifying shifts worked during the Class Period as the numerator, and (b) the aggregate total of all Class Members' qualifying shifts worked during the Class Period as the denominator. (*Ibid.*) The Claims Administrator shall then assign to each Class Member a "Settlement Award" which shall be calculated by multiplying

that Class Member's Settlement Ratio by the Net Settlement Amount. (*Ibid.*) Thus, the Settlement's proposed plan of allocation equitably bases the distribution of Settlement funds on the type and extent of damages suffered by each individual Class Member.

**Fairness of proposed attorneys' fees.** The allocation of total settlement funds between Class Members and Class Counsel is also fair, in that the Settlement provides for Plaintiffs' counsel to seek an amount that is no more than one-third of the Maximum Settlement Amount in fees. (Settlement, § 14; Jones Dec. ¶ 14.) The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Furthermore, the request aligns with other attorneys' fees awards for wage and hour class actions, particularly given that each of the 1,300-plus Class Members here will be entitled to receive a claim payment based on their actual shifts worked. (Jones Dec. at ¶ 19.) Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in class actions is to award a percentage of the "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." (Jones Dec. ¶ 19.)

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for determining fee awards, which typically involves reviewing voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989): This court is compelled to ask:

> Is this process necessary? Under a cost-benefit analysis, the answer would be a resounding, 'No!' Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be to the detriment of the class members. They are required to wait until the court has conducted a thorough and conscientious analysis of the attorneys' fees petition. Or class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

must rely on a lodestar approach, there is little incentive to reach an early settlement.

*Id.* at 1378–79. Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *Ibid.*

Courts now routinely use the percentage of the common fund approach to determine the award of attorneys' fees. (*See, e.g.*, *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378–79 (9th Cir. 1994) (approving attorneys' fees of one-third of the settlement fund). Class Counsel's application for less than one-third of the Settlement Funds in this case is within the range of reasonableness. Historically, courts have awarded percentage fees ranging from 20% to 50% of the common fund, depending on the specific circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6. Accordingly, the attorneys' fees sought in this case are fair and reasonable.

**Fairness of proposed "enhancement" award for Named Plaintiff Lester**. The principle of fairness is also well-served by the enhancement awards proposed for the Named Plaintiff. Plaintiff Lester provided invaluable assistance to her counsel in explaining Defendant's alleged compensation policies and procedures and in providing information to assist in the settlement negotiations. *See* Declaration of Julie Lester (hereinafter "Lester Dec.") ¶¶ 5-10. Further, Plaintiff Lester incurred personal risk in bringing this lawsuit on behalf of the other persons in the Class. (Lester Dec. ¶¶ 11-12.) *See, e.g.*, *Koehl v. Verio*, 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where the defendant prevailed at trial, the named plaintiffs were held liable, jointly and severally, for the defendant's attorneys' fees). Additionally, Plaintiff Lester has agreed to a general release of claims, which will bar her from suing Defendant for any claims against Defendant related to her employment with GNL. (Settlement, § 21.) Moreover, Plaintiff could

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

have been held liable for Defendant's costs if they were ultimately unsuccessful in resolving the case. (Lester Dec. ¶ 12.) In recognition of these risks, as well as the time-consuming and valuable role that class representatives play in class action litigation, service payments are recognized as serving an essential function in promoting class action settlements. In *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024. Accordingly, Plaintiff believes the proposed Enhancement Award is fair.

### 2.    The Settlement Is Reasonable.

At $1,375,000.00, the proposed Settlement is reasonable. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, the Class size in this case is relatively small, with around 1,300 Class Members, and because Settlement Class Members are eligible for individual financial benefits based on their actual shifts worked. (Jones Dec., ¶ 18; Settlement, § 12(d).) These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering factors such as the risk that a Class might not be certified pursuant to FRCP 23, or be significantly smaller than proposed, as well as the time, expense, and complexity of further litigation, including the possibility of appellate proceedings by either party. Of particular relevance to the reasonableness of the proposed Settlement are the numerous potentially dispositive defenses advanced including, among other things, the arguments that the claims are individualized and, therefore, not susceptible to class treatment; that any rounding of time falls under a *de minimis* defense, that penalty continuation wages should be severely limited, and/or are inapplicable. Given the significant legal and factual uncertainty relating to these defenses, the $1,375,000.00 Settlement represents a reasonable recovery based on the alleged violations. (Jones Dec. ¶ 18)

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

Furthermore, while Class Counsel believes that Plaintiff's claims are meritorious, they are experienced class action litigators and understand that the outcome of class certification, trial, and any attendant appeals is inherently uncertain, as well as likely to consume many more months or years. (Jones Dec. ¶ 17.) Having reviewed relevant compensation data and employment information, counsel for the Parties—all experienced class action litigators well-versed in wage and hour law—arrived at a reasonable resolution through a protracted arm's-length direct negotiation process, which continued through the negotiation of all details of the Settlement Agreement and ancillary documents. (*Id.*)

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers for Justice*, 688 F.2d at 625. The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g.*, *Young v. Katz*, 447 F.2d 431, 433–34 (5th Cir. 1971). Employment cases, particularly those involving wage and hour disputes, are often expensive and time-consuming. This is a class action that further amplifies the economies of time, effort, and expense achieved by the Settlement. Inevitably, the certification process alone would add time and cost to the litigation process. The Settlement, on the other hand, provides Class Members substantial, prompt, and efficient relief. The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

Here, the Settlement represents a compromise between experienced counsel for Plaintiff and Defendant based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position. After accounting for all anticipated fees, costs, and enhancements requested herein, each of the approximately 1,300 Class Members who submit a valid Claim Form will receive a Settlement Award based on the shifts the Class Member worked. (Jones Dec. ¶ 18.) Basing the Class Members' recovery on shifts worked is a fair and reasonable means to calculate Settlement Awards because Class Members who worked more shifts will receive a larger payout. (Jones Dec. ¶ 19.) This conclusion is reinforced by considering factors

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

such as the risk that a class might not be certified or might be significantly smaller than proposed, as well as the time, expense, and complexity of further litigation. Defendant asserts that it timely paid the Class Members all wages and overtime at the correct rate, that various overtime exemptions apply to the Class Members, and that penalties are not applicable to the alleged violations. Defendant further asserts that the matter is not appropriate for class treatment. The claims and defenses at issue in this case would likely result in protracted litigation, extensive class-wide discovery, and a likelihood of appellate proceedings. Ultimately, there were significant remaining risks for both Parties, and the Parties' Settlement represents an adequate and reasonable compromise that falls within the range necessary to support preliminary approval and notification to members of the potential Class for their consideration and response. (Jones Dec. ¶ 17.)

### 3. The Settlement Is Adequate.

As previously mentioned, in a somewhat similar class action, the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the Settlement is reasonable, primarily as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation...." *Officers for Justice*, 688 F.2d at 634 (citation omitted). Accordingly, a settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). An additional consideration is that a settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Here, considering the present value of the Settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the Class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

members of the Class were likely to achieve individually ranged from negligible to zero. Consequently, the $1,375,000.00 Settlement satisfies the criterion of adequacy. *See Manual for Complex Litig.* § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

**D.     The Notice Adequately Informs Class Members of the Settlement.**

The Notice explains the claim process; how to request to be excluded or object; and the consequences of the action the Class Member takes (filing a claim, doing nothing, opting out, or objecting), in terms of both financial benefit and release of state claims. (Exhibits A and D, Claim Form and Notice, respectively, to the Settlement.) The Notice informs Class Members about the final approval hearing, their rights with respect to that hearing, and how to obtain more information. (*Id.*) Likewise, the Claim Form and exclusion process are simple and straightforward. (*Ibid.*) The 30-day time frame for returning a claim is reasonable, allowing Class Members to digest the information in the notice and obtain answers to questions before deciding on the action they want to take. Accordingly, in addition to approving the Settlement Agreement as a whole, the Parties respectfully request that the Court approve the Notice and other ancillary forms in substantially the same format as presented with the Settlement.

**E.     Approval and Appointment of CPT Group as Claims Administrator.**

The Parties have agreed that the CPT Group should be appointed as the Claims Administrator in this case and instructed to carry out the terms of the Settlement. CPT Group has committed to effectuating the administration of the Settlement within the costs allocated under the Settlement. Accordingly, CPT Group should be appointed as Claims Administrator, and their fees and costs of $10,000.00 should be preliminarily approved.

/ / /

/ / /

/ / /

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

**V.    CONCLUSION**

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting preliminary approval of the class action Settlement attached hereto.

Dated:  August 11, 2025                                    Dated:  August 11, 2025

**THIERMAN BUCK**                                          **JACKSON LEWIS P.C.**

*/s/ Leah L. Jones*                                        */s/ Kirsten A. Milton*
Joshua D. Buck, Nev. Bar No. 12187                        Kirsten A. Milton, Nev. Bar No. 14401
Leah L. Jones, Nev. Bar No. 13161                         300 S. Fourth Street, Suite 900
325 W. Liberty St.                                        Las Vegas, Nevada 89101
Reno, Nevada 89501

*Attorneys for Plaintiff*                                 *Attorneys for Defendants GNL, LLC F/K/A*
*and all others similarly situated*                       *GNL CORP.*

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com