Joshua D. Buck, Nev. Bar No. 12187                    .
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
**THIERMAN BUCK**
325 W. Liberty Street
Reno, Nevada 89501
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff and all others similarly situated*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JULIE LESTER, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>GNL, CORP.; GNL, LLC; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:24-cv-01154-CDS-NJK<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, REPRESENTATIVE PLAINTIFF'S ENHANCEMENT AWARD, AND SETTLEMENT ADMINISTRATOR COSTS**<br><br>**Hearing Date:** December 17, 2025<br>**Time**: 10:00 a.m.<br>**Dept.:** Courtroom #6B<br>**Judge:** Hon. Christina Silva |

Plaintiff, Julie Lester ("Plaintiff"), on behalf of herself and all other similarly situated individuals, by and through her counsel, Thierman Buck, hereby submits this Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Costs, Representative Plaintiff's Enhancement Award, and Settlement Administrator Costs ("Motion for Final Approval"). Pursuant to the Federal Rules of Civil Procedure ("FRCP"), Plaintiff asks the Court for an order:

(i) Finally approving the class action settlement between Plaintiff and Defendant GNL, LLC (f/k/a GNL Corp.);

(ii) Finally certifying the FRCP Rule 23 Class for purposes of settlement;

(iii) Approving the Representative Plaintiff's Enhancement Award;

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

1  (iv) Approving Class Counsels' Fees and Costs;

2  (v) Approving the Costs of the Settlement Administrator; and

3  (vi) Dismissing the case with prejudice as of the Court's Final Order and Judgment,

4  pursuant to the terms set forth in the Settlement Agreement.

5  The Motion for Final Approval is based upon this Motion, the following memorandum

6 and points of authorities in support hereof, the declarations filed in support of this Motion, the

7 Class Action Settlement between Plaintiff Julie Lester and Defendant GNL LLC ("Settlement")

8 (ECF No. 34-1, Exhibit 1, pp 5-26), the Court's Order Granting Preliminary Approval of the

9 Settlement (ECF No. 39), all accompanying exhibits, and records on file herein, all matters upon

10 which judicial notice may be taken, any oral argument that may be presented, and upon such other

11 matters the Court deems just and necessary.

13  Dated: December 10, 2025            /s/  Leah L. Jones
14                                     Joshua D. Buck
                                       Leah L. Jones
15                                     **THIERMAN BUCK**

16                                     *Attorneys for Plaintiff and all others*
                                       *similarly situated.*

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On September 11, 2025, the Court entered an order granting preliminary approval of the settlement of the above-captioned case. (ECF No. 39, hereafter the "Preliminary Order.") In addition to approving the overall settlement (the "Settlement"), the Preliminary Order appointed the Class Representative and Class Counsel, approved the Notice to Class Members, scheduled the final approval and fairness hearing, and confirmed the selection of CPT Group as the Settlement Administrator. (*Id.*) Plaintiff and Defendant GNL LLC ("Defendant" or "GNL") (collectively the "Parties") have complied with all the terms of the Court's Preliminary Approval Order. Plaintiff now seeks final approval of this class action settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

The class administration procedures ordered by the Court have been completed as summarized in the declaration prepared by Chantal Soto-Najera of CPT Group (hereinafter, "Soto-Najera Dec.") The Notice and all related materials ("Notice Packet") were distributed to 1,537 Class Members, and only 25, or 1.6%, were ultimately deemed undeliverable. (Soto-Najera Dec., ¶¶ 2-9.) Deadlines for Class Members to submit claim forms, opt out of, or object to the Settlement have passed. (*Id.*, ¶ 7.) CPT Group. received 611 valid claim forms or 39.75% of the Class, with these claimants having claimed approximately 70.03% of the available shifts, or 358,480 shifts worked. (*Id.*, ¶¶ 15-17.) The highest individual class payment to a participating Class Member is approximately $2,942.16, and the average individual Class Payment is $998.08. (*Id.*, ¶ 17.) One single Class Member has requested exclusion from the Settlement, and no Class Member objected. (*Id.*, ¶ 14.) As of this date, there remain two (2) disputed claims received, which are being reviewed by Defendants. (*Id.*, ¶ 12.) Counsel will provide the Court with an update on the disputed claims at the Final Approval hearing.

### II.    THIS LITIGATION

Plaintiff incorporates by reference the Parties' Joint Motion for Preliminary Approval (ECF No. 33). Plaintiff provides an overview of the procedural history to assist the Court in its analysis

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

regarding the overall fairness, reasonableness, and adequacy of the Settlement as well as Class Counsel's fees and costs request, the Enhancement Award to Class Representative Lester, and Claims Administrator, CPT Group's fees.

On May 13, 2024, Plaintiff Julie Lester filed a putative class action complaint in the Eighth Judicial District Court, Clark County, Nevada (Case No. A-24-893207-C). Plaintiff's claims were based on alleged unlawful rounding of time and failure to include non-discretionary commission payments into the regular rate of pay when calculating overtime premium pay. Plaintiff alleged four causes of action: (1) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250, *et seq*.; (2) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016; (3) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; and (4) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050. Defendant filed a Notice of Removal to this Court on June 24, 2024. (ECF No. 1.) On July 22, 2024, Defendant filed an Answer to Plaintiff's Class Action Complaint. (ECF No. 12.) On September 16, 2024, a Discovery Plan and Scheduling Order was entered. (ECF No. 20.)

The Parties engaged in multiple substantial discussions regarding their respective positions and the information and data needed to evaluate the merits of the claims appropriately. (Declaration of Leah L. Jones, hereinafter "Jones Dec.", ¶¶ 7-8.) Also, Defendant's counsel provided Plaintiff's counsel with sample class member timekeeping and payroll data. (*Id.*, ¶ 8.) Based on a thorough review of the claims alleged and both Parties' legal authority and data review, the Parties agreed to early mediation in an attempt to preserve precious resources of both the Parties and the Court. (*Id.,* ¶ 9.) Thereafter, the Parties retained the services of Hon. David Wall (Ret.) to conduct a mediation and provide a frank assessment of each Party's position. (*Id.,* ¶ 9.) Following extensive discussions regarding the strengths and weaknesses of their respective positions, the Parties reached a proposed class action settlement through arms-length direct negotiations. (*Ibid.*)

On April 18, 2025, the Parties filed a Joint Notice of Settlement. (ECF No. 24.) The Parties have requested three extensions of time to finalize the Settlement Agreement (ECF Nos. 25, 27, and 29), and each extension has been granted. (ECF Nos. 26, 28, and 30.) The Parties filed their Joint

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

Motion for Preliminary Approval of Class Action Settlement on August 11, 2025. (ECF No. 33.) The Court held a hearing on the Parties' Joint Motion on September 10, 2025, and on September 11, 2025, the Court entered an order granting preliminary approval of the settlement. (ECF No. 39.)

### III.    KET TERMS OF THE SETTLEMENT

#### A.    The Settlement Class

All non-exempt hourly paid employees employed by GNL, LLC, formerly known as GNL, Corp., in the State of Nevada at any time since May 13, 2021, up to and including the date the Court grants preliminary approval of this Settlement. (ECF No. 34-1, ¶ 1(f) – (g), (w)).

#### B.    The Settlement Allocation

The Settlement provides a Maximum Settlement Amount of $1,375,000.00. (Settlement Agreement, ECF No. 34-1, pp. 7-9, ¶¶12(a) – 12(d).) The Net Settlement Amount will be approximately $871,666.67.[1] (Soto-Najera Dec., ¶ 16.) The Net Settlement Amount Represents the Maximum Settlement Amount minus: (i) no more than $15,000.00 in Enhancement Award to Named Plaintiff Julie Lester for the risks she undertook in initiating this action and the work she performed on behalf of the Class Members; (ii) up to $458,333.33 in attorneys' fees, which represents 1/3 of the common fund, for the unpaid hours invested in prosecuting this action and the extreme risk counsel took in litigating this action on a contingency fee basis; (iii) reimbursement of the actual out-of-pocket expenses of $9,318.21 incurred by counsel in litigating this action; and (iv) an amount of up to $15,000.00 in third-party settlement administrator fees and costs for administering the settlement notification process and distribution of settlement funds. (Soto-Najera Dec., ¶¶ 16, 18; Jones Dec., ¶ 25[2].)

---

[1] The dollar amounts provided are approximations based on final approval by this Court of Class Counsel's fees and costs, the Settlement Administrator's fees, as well as the approval of the Enhancement Award. Class Counsel anticipates additional costs of approximately $100.00 in travel to attend the December 17, 2025, hearing for Final Approval of Class Action Settlement, which is reflected in the amount listed.

[2] The Preliminary Approval Order and Notice indicated the Claims Administration fees would be no more than $10,000.00. However, the original quote was in the amount of $13,500.00. Based on the settlement terms, the email campaign notice required had not been included in the original

**C.      Release of Claims**

Once the Settlement is final and effective, the Class Representative and all Settlement Class Members who have not opted out will release all federal and state law claims for damages against Defendant that are *based on the factual allegations asserted in this action*. Thus, claims such as workers' compensation claims, non-wage, and civil rights claims are not being released by Class Members. (ECF No. 34-1, pp. 18-20, ¶¶ 21-23.)

## IV.      ARGUMENT IN FAVOR OF FINAL APPROVAL OF THE SETTLEMENT

Federal Rule of Civil Procedure 23(e) "mandates judicial review of any settlement of the claims, issues, or defenses of a certified class." *Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, at *5 (D. Nev. June 27, 2011), *citing* FRCP 23(e). Three steps must be satisfied for final approval of the Settlement. First, the Court must finally certify the Settlement Class. Second, the Court must find that the Class received adequate notice under FRCP 23(c)(2)(B). Third, the Court must decide whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing Rule 23(e)(2) standard). These requirements are all met.

**1.      The Settlement Class Should Be Finally Certified**

In the Preliminary Approval Order, this Court preliminarily approved the same Class under Rule 23. (ECF No. 39.) Nothing has changed to alter that approval, and the same analysis applies here. Thus, the Class should be certified for settlement purposes under Rule 23(e), for the same reasons set forth in the Parties' Joint Motion for Preliminary Approval of the Settlement. (ECF No. 33, §IV A-B, pp. 9-14.)

**B.      Rule 23(c)'s Notice Requirements Have Been Met**

A class action certified under Rule 23(b)(3) must satisfy the Rule 23(c)(2) notice provisions, and upon settlement, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FRCP 23(e)(l). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular

---

estimate. The additional cost reflects the expenses associated with that requirement. (Soto-Najera Dec., ¶ 18; Jones Dec. ¶ 25.)

information. FRCP 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

This Court approved the Class Notice and the notice distribution program. (ECF No. 39.) As outlined in the Introduction above and further discussed in §V below, CPT Group. flawlessly implemented the Notice process. Ultimately, over 98% of the Class Members received a Notice (Soto-Najera Dec. at ¶¶ 8-9, noting 25 out of 1,537 Notices remained undeliverable after remailing and skip tracing, equal to 1.6% of the total class), which far exceeds the constitutional requirement for notice. *In re Motor Fuel Temperature Sales Litig.,* 429 F.3d 935, 944 (10th Cir., 2005) ("For due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.") (citations and internal quotation marks omitted). The Notice itself also exceeded the constitutional requirements to inform Class Members about the Settlement by particularly notifying each Class Member that they could dispute the covered shifts worked and the means to determine each Class Member's personalized settlement share. (ECF No. 33-1, Exhibit D, pp. 50-54.) The Notice informed Class Members of the nature of the action, the terms of the proposed settlement, the effect of the action and the release of claims, as well as Class Members' right to exclude themselves from the action and their right to object to the proposed settlement. (Soto-Najera Dec., ¶ 4, Exhibit A.) Thus, Notice complied with all of the requirements of Rule 23.

### C. The Settlement is Fair, Reasonable, and Adequate

The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," who "is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). But the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation and internal quotation marks omitted).

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (internal quotation marks and citation omitted). There "is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary settlement agreements" exists, and "this presumption is especially strong in class actions and other complex cases … because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3rd Cir. 2011) (internal citation and quotation marks omitted).

In determining whether a settlement agreement is fair, reasonable, and adequate the Court must weigh some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004), *citing Hanlon,* 150 F.3d at 1026. Courts are not required to assess whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Hanlon*, 150 F.3d at 1027; *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (courts should also consider whether the settlement is a product of fraud or collusion). All of these factors support final approval of the Settlement.

### 1.    Relative strength of Plaintiff's claims.

In considering the relative strength of plaintiff's claims, courts typically consider decisions relating to the merits of the plaintiff's claims and whether settlement occurs before any substantive motions are decided. *See e.g., Pierce v. Rosetta Stone, Ltd.*, No. C- 11-01283 SBA, 2013 WL 5402120, at *3 (N.D. Cal. Sept. 26, 2013); *Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *3 (N.D. Cal. Dec. 3, 2012).

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

Here, the Parties exchanged initial disclosures, including Defendant's production of sample time and pay data, and Plaintiff provided expert Disclosures very early in the litigation. (Jones Dec., ¶ 7.) Based on a thorough review of the claims alleged and both Parties' legal authority and data review, the Parties agreed to early mediation in an attempt to preserve precious resources of both the Parties and the Court. (*Ibid.*) Because these efforts resulted in the preliminary approved settlement, and before any substantive motions were filed, the Court did not have the opportunity to consider the merits of Plaintiff's claims. As such, this factor is neutral. *Pierce v. Rosetta Stone, Ltd.,* 2013 WL 5402120, at *3.

2.    Risk, expense, and complexity of further litigation.

Settlement is preferable to lengthy, expensive litigation with uncertain results. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 6900931, at *7 (D. Nev. Dec. 26, 2012) *report and recommendation adopted*, 2013 WL 211085 (D. Nev. Jan. 18, 2013).

Here, continued litigation would have posed a considerable risk and would have necessarily involved extensive discovery and complex legal issues specific to wage-hour laws and continuation wage penalties, as well as costly and lengthy litigation, combined with the uncertainty of a jury trial. And, regardless of how the claims might ultimately be resolved in this Court or through a jury trial, it is likely that there would be appellate proceedings to resolve one or more of the complex legal issues driving this action.

Furthermore, while Class Counsel believes that Plaintiff's claims are meritorious, they are experienced class action litigators and understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain. (Jones Dec., ¶¶ 13-14, 17.) Continued litigation would have required voluminous written discovery, numerous depositions, and extensive motion practice. (*Id.,* ¶ 13.) All of which would have easily consumed many more months or even years. (*Ibid.*) Having reviewed relevant time, compensation data, and employment information, Counsel for the Parties—all experienced class action litigators well-versed in wage and hour law—arrived at a reasonable resolution through a protracted and arm's-length direct negotiation process with a mediator, which continued into all details of the Settlement Agreement and ancillary documents. (Jones Dec., ¶¶ 14-17.)

This Settlement avoids further expense and delay and guarantees a recovery for class members. (*Id.,* ¶ 13.) Therefore, the risks associated with further litigation weigh in favor of final approval, consistent with the established policy preferring settlement over further time-consuming litigation. *Harris*, 2012 WL 6900931, at *7.

### 3. Risk of maintaining class status.

Here, there was a real risk that a Class might not be certified pursuant to FRCP 23 or might be significantly smaller than proposed. The time, expense, and complexity of the litigation, including the possibility of additional appellate proceedings, presented a significant risk, and further expense and delay would have resulted had the Parties failed to reach a compromise. (Jones Dec. ¶ 13.) In sum, the Settlement eliminates all uncertainty and gives class members a substantial payment now, rather than after years of further litigation. Thus, this factor weighs in favor of final approval.

### 4. Benefits conferred by the Settlement.

A settlement may be fair and reasonable even if it provides only a fraction of what could have been obtained at trial. *See e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2nd Cir. 1974) *abrogated on other grounds* (that proposed settlement may amount to only a fraction of potential recovery does not mean the proposed settlement is inadequate and should be disapproved).

In preparation for mediation, Defendant provided Plaintiff with a random 15% sample of time punch and pay data from the 1,170 employee class members identified at that time. (Jones Dec., ¶ 8.) Armed with this information, Plaintiff's damages expert was able to calculate Defendant's wage exposure at $446,898.35. (*Id.*) A full sixty days of continuation wage penalties under NRS 608.040 and 608.050 brought the total exposure to approximately $5.5 million. (*Ibid.*) All calculations were based on a weighted overtime rate, which took into consideration varying hourly rates for the various Class Members. (*Ibid.*)

Using that estimated hard damage exposure, the gross settlement fund amount of $1,375,000.00 represents a 100% recovery of the wages owed, plus recovery of continuation wage

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

penalties. (*Id.,* ¶ 10); *see also Villegas v. JP Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012), *citing In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.")). Plaintiff agreed to resolve her claims on behalf of herself and on behalf of the Class for the following principal reasons. First, Plaintiff and the Class will receive 100% of the wages owed, with a payout based on shifts worked. Second, 100% recovery of wages at this stage of the litigation represents a quick and certain payout for all members of the Class. (Jones Dec., ¶ 10.) Third, continuation wage penalty recovery under both NRS 608.040 and NRS 608.050 is not guaranteed, and a payment of penalties to all participating and eligible Class Members takes away any risk should the action  not ultimately proceed to trial on a class-wide basis. (*Id.*) By resolving the case on a class-wide basis, all class members will receive funds, whereas there was a significant risk that the amount paid to absent class members would be zero. (*Ibid.*)

Accordingly, the gross settlement fund amount of $1,375,000.00 is reasonable when balanced against the potential outcomes of further litigation and appeals. (*Id.,* ¶¶ 13-17.) The settlement class fund, made available to currently employed and formerly employed class members, represents an exceptional recovery for the class, even without accounting for the risks that class treatment could be denied or that Defendant would prevail on the merits. (*Id.*) Thus, this factor, too, favors final approval of the settlement.

5.    <u>Extent of discovery completed and stage of the proceedings.</u>

This Settlement, following informal discovery and genuine arms-length negotiation through the assistance of a mediator, is presumed fair. *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). As discussed in the motion for preliminary approval, the Parties engaged in extensive discussions and both formal and informal discovery of the claims and defenses, including reviewing relevant compensation data, employment information, and by analyzing the relevant facts and authority. By the time the Parties agreed to the Settlement, the Parties were well versed in the facts and law applicable to the issues and had evaluated the merits of their claims and defenses. *Tijero v. Aaron Bros., Inc.,* 301 F.R.D. 314, 324 (N.D. Cal. 2013).

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

1
2
3

At the time the Settlement was reached, the Parties "ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner Commc'nd Sec. Ltig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). Thus, this factor weighs in favor of final approval.

### 6. Experience and views of Plaintiff's Counsel.

Because they are closely acquainted with the underlying litigation, significant "weight is accorded to the recommendation of counsel." *Nat'l Rural, 221 F.R.D.* at 528 (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Plaintiff is represented by counsel with broad experience in complex employment litigation. (Jones Dec., ¶ 17.) Plaintiff's counsel recommends that the Settlement be approved because they believe it is fair, reasonable, and adequate to the proposed class and because it reflects a reasoned compromise that takes into consideration the inherent risks in all employment class litigation and, in particular, this action. (Jones Dec. at ¶¶ 12-17.) Given the experience of the attorneys involved in this litigation, the Court should credit counsels' view that the settlement is fair, reasonable, and adequate. *Rodriguez*, 563 F.3d at 967 (parties represented by capable counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome). Accordingly, this factor weighs in favor of final approval as well.

### 7. Presence of a governmental participant.

There is no governmental participant in this action. As a result, this factor is inapplicable.

### 8. Reaction of the Class.

Here, over 98% of the Notice Packets were successfully mailed. (Soto-Najera Dec. at ¶¶ 8-9.) Only one (1) Class Member requested exclusion from the Settlement, and no Class Members objected. (*Id.,* ¶¶ 14, 11.) CPT Group received 611 valid claim forms, equal to 39.75% of the total Class. (*Id.,* ¶ 15.) Claimants have claimed approximately 70.03% of the available shares of the Settlement. (*Id.,* ¶17) These facts suggest that the entire class approves the settlement. *See Lee V. Enterprise Leasing Co.-West,* 2015 WL 2345540, *7 (D. Nev. 2015) (noting 11% rate does not indicate proposed settlement is not fair, reasonable, and adequate given six objections and small number of opt-outs, "does not cast doubt on what appears to be a beneficial settlement for the class members."). Therefore, this factor also favors final approval of the settlement. (*Id.,* *6-7 (granting

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

final approval where six class members objected, less than 1% opted out, and noting, " the dearth of meaningful objections and relatively small number of opt-outs does not cast doubt on what appears to be a beneficial settlement for the class members.")).

### 9.    <u>The negotiation process was free from fraud and collusion</u>.

The Court's inquiry into what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler*, 92 F.3d 1503, 1506 and n.5 (9th Cir. 1996). Here, the Court preliminarily concluded that the settlement was "fair, reasonable, and adequate" as to all potential settlement class members. (ECF No. 39.) Nothing has changed to alter that conclusion. The Parties began settlement negotiations only after sharing necessary information through the exchange of disclosures and pertinent discovery, researching relevant legal issues, engaging in serious, arm's-length negotiations, analyzing the potential recovery, and ultimately reaching the Settlement through the assistance of a mediator, which the Court preliminarily approved. (Jones Dec. at ¶¶ 7-10.) The Parties acknowledged the risks on the merits and class issue and determined that settlement was sensible to avoid these risks and the time and expense required for further litigation and potential appeals. (*Id*.) Because the Parties were fully informed and engaged in arm's-length negotiations, the agreement is free from fraud and collusion.

In short, under the applicable standards for approval of a class action settlement under FRCP 23(e), the Settlement meets the standards for final approval.

## V.    **The Settlement Claims Administration Expenses Are Reasonable And Should Be Approved**

The Settlement Administrator, CPT Group, has fully complied with the Settlement and the Order of this Court preliminarily approving the Settlement. CPT Group. has incurred and will incur $15,000.00 in costs in furtherance of the administration of the Settlement. (Soto-Najer Dec., ¶ 18; *see also,* footnote 2, *supra* and Jones Dec., ¶ 25.) Given the work performed and expenses incurred on behalf of the Settlement Class, the Claims Administration fee should be finally

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

approved as fair, reasonable, and adequate. (Jones Dec., ¶ 26.)

## VI.    The Class Representative's Enhancement Award Should Be Approved

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). The amount of $15,000.00 to the named Plaintiff Lester is not excessive. "Incentive awards [as opposed to agreements] are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 958 (9th Cir. 2009). The total of $15,000.00 in award is in line with what is generally awarded in class-action settlements in the Ninth Circuit. *See, e.g., Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to one named plaintiff for 10 years of active litigation ); *Glass v. UBS Financial Services, Inc., 2007 WL 221862*, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each of four named plaintiffs for seven months of litigation).

Here, as set forth in the Preliminary Approval Motion, the Class Representative has been an active participant in the litigation. (ECF No. 33-1, Jones Dec. at ¶¶ 23-25; Declaration of Julie Lester, hereinafter "Lester Dec.", ¶¶ 4-11.)[3] Plaintiff Lester initiated this lawsuit in January 2024, when she sought out experienced counsel versed in Nevada wage and hour law. (Lester Dec., ¶¶ 3-4.) Plaintiff Lester provided invaluable assistance to her counsel in explaining Defendant's compensation policies and procedures and in providing information to assist in the settlement negotiations. (*Id.* ¶¶ 5-10.) Further, Plaintiff Lester incurred personal risk in bringing this lawsuit on behalf of the other persons in the Class. (*Id.,* ¶¶ 11-12; *see, e.g., Koehl v. Verio*, 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where the defendant prevailed at trial, the named plaintiffs were held liable, jointly and severally, for the defendant's attorneys' fees)). Additionally, Plaintiff Lester signed a general release of claims, which will bar her from suing Defendant for any claims related to her employment with GNL. (Settlement, § 21.) Moreover, Plaintiff could have been held liable for Defendant's costs if they were ultimately unsuccessful

---

[3] Citations to Plaintiff Lester's declaration were included in the Motion for Preliminary Approval, however it was inadvertently not filed with ECF No. 33 or the Addendum (ECF No. 34). It is filed herewith.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

in resolving the case. (Lester Dec. ¶ 12.) Nothing has changed to diminish her contribution. In recognition of these risks, as well as the time-consuming and valuable role that class representatives play in class action litigation, service payments are recognized as serving an essential function in promoting class action settlements. In *League of Martin v. City of Milwaukee*, the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004, 1024 (E.D. Wis. 1984). Additionally, her Enhancement Award was included in the Notice to Class Members, and no Class Member objected to such payment. Accordingly, Representative Plaintiff Lester's Enhancement Award should be approved.

## VII.    Class Counsel's Attorneys' Fees and Costs Should Be Approved

### A.    Class Counsel's Fee Award is Properly Calculated as a Percentage of the Total Settlement Amount

The United States Supreme Court has recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970). This is commonly referred to as the common fund doctrine. The purpose of the common fund doctrine is to avoid unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it*." In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (hereafter WPPSS); *see also State, Dept. of Human Resources, Welfare Div. v. Elcano,* 794 P.2d 725, 726, 106 Nev. 449, 452 (Nev. 1990) (recognizing attorney fee recovery under the common fund doctrine under Nevada law); *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549, 121 Nev. 837, 864–65 (Nev. 2005) (same).  The fairest way to calculate a reasonable fee when contingency fee litigation has produced a common fund—and the way that best promotes efficiency in litigation—is by awarding Class Counsel a percentage of the total fund. *See, e.g., Blum v. New York State Dept. of Social Servs.*, 465 U.S. 886, 900 n.16 (1984); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. Cal. 1990)

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

(common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The percentage-of-recovery method is most appropriate where, as here, the settlement results in a true common fund. *Laguna v. Coverall North America Corp.*, 753 F.3d 918, 922 (9th Cir. 2014). The "recognized advantages of the percentage method" include "relative ease of calculation, which reduces the burden on the court, alignment of incentives between counsel and the class, and a better approximation of [private] market conditions" in contingency-fee litigation. *Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 WL 5826230, *16 (N.D. Cal. Dec. 8, 2021) (internal quotation marks omitted); *see also In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (N.D. Cal. 1989); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Ass'n. v. Dunkley*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis."). The percentage method has long been the "dominant" method of determining fees in cases like this one, in which counsel's efforts generated a non-reversionary cash settlement fund in a fixed amount for the benefit of the class. *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007) (Conti, J.) (citing *Vizcaino*, 290 F.3d at 1046; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311; *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). Accordingly, Class Counsel's requested fees and costs should be analyzed under the common fund doctrine.

1.    Class Counsel's request for one-third of the total Settlement fund is fair, reasonable, and adequate.

Fee awards in common fund cases typically range "from 20 to 50 percent of the common fund created." *See* Newberg § 14:6 (4th ed. 2008). "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." (*Id.*) "Empirical studies show that, regardless of whether the percentage

method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." (*Id.*)

State and federal courts applying the percentage-of-recovery method frequently award 33-1/3% of the common fund. *See, e.g., In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming award of 33%); *Jane Roe, et al. v. SFBSC Management, LLC, et al.*, 2022 WL 17330847, at *19 (N.D. Cal., 2022) (awarding 33% of common fund); *see also Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average around one-third of the recovery).[4] The Ninth Circuit identified five factors relevant to determining whether a particular percentage fee is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the complexity of the case, the skill required and the quality of work performed by plaintiffs' counsel; (4) the contingent nature of the fee and the financial burden carried by plaintiffs' counsel; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50.[5] Applying the *Vizcaino* analysis, the requested one-third fee is reasonable under the circumstances of this case. Here, Plaintiffs have addressed the first three factors in the preceding analysis.  *See* (1) results achieved, at §IV.C.4 and 8, (2) risks of litigation, at §IV.C.2 and 3, and (3) complexity, skill, work performed, at §IV.C.2 and 3. Plaintiff addresses the fourth and fifth factors here.

       a.    <u>The contingent nature of the fee and the financial burden carried by Class Counsel.</u>

---

[4] *Accord Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF, 2022 WL 254349, *5-*6 (N.D. Cal. Jan. 27, 2022); *Moreno v. Capital Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087- DMR, 2021 WL 4133860, *4-*6 (N.D. Cal. Sept. 10, 2021); *Chavez v. Converse, Inc.*, No. 15-CV- 03746-NC, 2020 WL 10575028, *5-*6 (N.D. Cal. Nov. 25, 2020); *Greer v. Dick's Sporting Goods., Inc.*, No. 2:15-CV-01063-KJM, 2020 WL 5535399, *11 (E.D. Cal. Sept. 15, 2020); *Jordan v. Michael Page Int'l, Inc.*, 2020 WL 4919732, *8-*10 (C.D. Cal. Jul. 2, 2020); *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1018-23 (E.D. Cal. 2019); *In re Lidoderm Antitr. Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, *1 (N.D. Cal. Sept. 20, 2018); *Aguilar v. Wawona Frozen Foods*, No.  1:15-cv-00093-DAD, 2017 WL 2214936 (E.D. Cal. May 19, 2017) (all awarding one third under *Vizcaino*).

[5] While the Ninth Circuit has established a "benchmark" fee of 25% for common fund cases, which a district court may increase or decrease if warranted in a particular case (*see Six Mexican Workers*, 904 F.2d at 1311 (9th Cir. 1990)), there is no such benchmark under Nevada law.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

The attorneys at Thierman Buck have dedicated their practice to representing employees, predominantly in wage and hour class actions, for the past two decades. (Jones Dec., ¶ 28.) Plaintiffs' Counsel have represented Plaintiff and the Class on a contingency fee basis. (*Id.,* ¶ 29.) Counsel's agreement with named Plaintiff Lester in this case provided for an attorney's fee award of up to 33.3% of the recovery as approved by the court, plus costs. (*Id.*) Thierman Buck operates on a contingency fee basis. (*Id.,* ¶ 30) While our firm has been successful in many actions, this is not always true. (*Id.,* ¶ 32.) Hourly-paid attorneys get compensated for all the hours they invest in a case. (*Id.*) Contingency fee attorneys do not. (*Id.*) Contingency fee attorneys must be successful in more cases than they are unsuccessful, or they will cease to exist, and plaintiffs like the one in this case will have nowhere to turn.

Because most of the cases we litigate are collective and/or class actions, we are frequently required to pay significant costs in furtherance of the litigation and never recover those costs. (*Id.,* ¶ 30.) We are also unable to recover the amount of attorney time invested in losing cases. (*Id.*) Attorneys should be "reward[ed]" "for taking the risk of non-payment by paying them a premium … for winning contingency cases," thereby "assuring competent representation for plaintiffs who could not afford to pay on an hourly basis …." *WPPS*, 19 F.3d at 1299-1300. What is more, Class Counsel incurred $9,318.21 in out-of-pocket litigation costs. (*Id.,* ¶ 31.) "This substantial outlay, when there [was] a risk that none of it [would] be recovered, further supports the award of the requested fees." *Omnivision*, 559 F. Supp. 2d at 1047. "A higher-than-benchmark award exists to reward counsel for investing 'substantial time, effort, and money, especially in light of the risks of recovering nothing.'" *Carlin*, 380 F.Supp.3d at 1021 (quoting *WPPSS*, 19 F.3d at 1299-300); *see also Vizcaino*, 290 F.3d at 1051 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.").[6]

---

[6] In n *In re Nat'l Collegiate Athletic Ass'n,* 2017 WL 6040065 at *4 the court observed "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Indus.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (emphasis added). "This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Counsel has prosecuted this case on a contingency fee basis while advancing all labor and costs for the benefit of the 1,537 Class Members. Class Counsel have thoroughly reviewed the time entries recorded in this case and, exercising billing judgment, have removed any time for non-essential tasks or duplicative efforts. (*Id.*, ¶ 30.)  In total, Class Counsel has invested $90,935.00 of their own labor and $9,318.21 in litigation costs, with no guarantee whatsoever of any recovery. (Jones Dec. ¶¶ 30-31, 33.) And the Settlement Notice to Class Members that was approved by this Court included the amount of fees sought by Class Counsel and provided the opportunity for Class Members to voice their opinion as to the  appropriateness of Class Counsel's fee request prior to final approval, and not one Class Member objected. Accordingly, the contingent nature of the representation justifies the fee requested.  *See*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993) ("Class counsel, however, have the case on a contingency.  Moreover, it is a double contingency; first, they must prevail on the class claims, and then they must find some way to collect what they win.").

> b.    *Awards made in similar cases.*

In other wage and hour cases, Class Counsel has been awarded at least one-third of the common fund. *See*, *e.g.*, *Yousif et al v. The Venetian Casino resort, LLC,* Case No. 2:16-cv-02941-RFB-NJK (Aug. 19, 2025), awarding class counsel 33.3% of $7.4 million common fund); *Nevett et al v. Renown Health,* Case No. 3:21-cv-00319-ART-CSD (Feb. 2, 2025) awarding class counsel 33.3% of $8.75 million common fund); *Walden v. State of Nevada, ex rel, Nevada Dept of Corrections,* Case No. 3:14-cv-00320-MMD-CSD, (March 20, 2023) (awarding class counsel 33.3% of $55 million common fund after appeals to both the Nevada Supreme Court, the Court of Appeals for the Ninth Circuit); *Neville v. Terrible Herbst*, Case No. A-15-728134-C, Dept. 14 (Oct. 15, 2021) (awarding class counsel 33.3% of the $3.2 million common fund); *Barnett v. WBF*

---

premium over their normal hourly rates for winning contingency cases." *Vizcaino II*, 290 F.3d at 1051 (emphasis added). And "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

*McDonald's Management,* Case No. A-18-7777786-C (June 25, 2020) (awarding class counsel 33.3% of $6 million common fund);  *Botezatu v. Las Vegas Limousines, LLC, Case No. 2:16-cv-00397-RFB-PAL (Sept., 2017)* (granting one-third attorneys' fees).[7] (Jones Dec. ¶ 32.) Accordingly, Class Counsel's fee request of one-third of the common fund is reasonable.

2.    The requested fee is reasonable under a lodestar crosscheck.

Generally, a district court is "not required" to conduct a lodestar cross-check to assess the reasonableness of a fee award. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017). A district court may, however, elect to perform such a check to confirm "the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Even a pure lodestar-based fee award does not require mathematical precision. *Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir. 2000); *Kang*, 2021 WL 5826230, *17 ("on a lodestar cross-check this Court is not required to flyspeck the time sheets"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("lodestar cross-check calculation need entail neither mathematical precision nor bean counting").

Class Counsel's lodestar to date is $90,935.00, reflecting 146.90 hours of professional time that have been devoted to this case thus far. (Jones Dec. at ¶¶ 31, 33-34.) The lodestar figures are based on hourly rates ranging from $150.00 for legal assistants to $995.00 for senior partners, which other courts have accepted as fair and reasonable.[8] (*Id.*)

---

[7] Courts in the Ninth Circuit have also awarded one-third of a common fund. *See e.g., In re Heritage Bond Litig*, 2005 WL 1594403, at *18, n.12 (C.D. Cal Jun. 10, 2005) (noting that more than 200 federal cases have awarded fees higher than 30%).

[8] These rates fall well within the range approved in other class action litigation in this district in recent years. *See, e.g., Kang*, 2021 WL 5826230 at *17 (approving rates ranging from $350 for associates to $950 for partners and $1,150 for "experienced appellate counsel"); *Lidoderm*, 2018 WL 4620695 at *2 (approving as "reasonable" rates "rang[ing] from $350 to $1,050 for partners and senior counsel, $300 to $675 for associates, and $100 to $400 for paralegals and other litigation staff"); *In re LendingClub Sec. Litig*., No. C 16-02627 WHA, 2018 WL 4586669, *2 (N.D. Cal. Sept. 24, 2018) (five years ago; approving hourly rates ranging from $275 for paralegals to $1,030 for senior partners as "high but within the range of reasonable"); *NCAA*, 2017 WL 6040065 at *8 (six years ago; approving partner rates from $578 to $1,035; "of counsel" rates from $450 to $900, associate rates from $350 to $635, "staff and law clerk" rages

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

1    Based on the current combined lodestar, the proposed fee award of $458,333.33 represents

2  a multiplier of 5.04. (*Id.,* ¶ 33.) This is reasonable in view of "the substantial risk class counsel

3  faced, compounded by the litigation's duration and complexity"—factors that would have

4  justified a significantly higher multiplier under both federal and Nevada law. *See e.g., Vizcaino,*

5  290 F.3d at 1051 n. 6 (citing cases approving multipliers as high as 19.6); *Steiner* v. *America*

6  *Broadcasting Co. Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier

7  of 6.85).[9]

8    Between now and the close of settlement administration, Class Counsel anticipate

9  devoting additional hours to such tasks as communicating with class members, coordinating with

10  the Settlement Administrator and Defense Counsel, presenting argument at the final approval

11  hearing, and overseeing post-approval distribution. (Jones Dec., ¶ 35.) As the litigation continues,

12  the multiplier will become less and less until Class Members have received their checks. In sum,

13  a lodestar cross-check confirms that a fee award of one-third of the common fund is reasonable

14  and appropriate in this case.

15  **VIII.    Class Counsel's Cost and Expenses Actually Incurred for the Benefit of the Class Should Be Approved**

16

17    In the course of this litigation, class counsel has incurred $9,318.21 in out-of-pocket costs

18  and expenses, which is less than the $10,000.00 agreed upon in the Settlement. (Jones Dec. at ¶

19  32, Exhibit 1.) Given that the class Notice plainly disclosed that up to $10,000.00 would be

20  allocated to pay litigation costs advanced by class counsel, and that there were no objections to

21  the settlement, the Court should approve Plaintiff's costs and expenses.

22  / / /

23

24

25  from $175 to $225; "a reputable survey of billing rates" shows rates of "$200 to $1,080" for "attorneys in California in 2015").

26

27    [9] *See also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight [8] times the lodestar, and in some cases, even

28  higher multipliers"); *Weiss v. Mercedes-Benz of N. Am.*, 899 F.Supp. 1297 (D.N.J. 1995) (9.3 multiplier), *aff'd*, 66 F.3d 314 (3d Cir. 1995).

VIII.    CONCLUSION

Based on the information and reasons provided above, Plaintiff respectfully requests that the Court enter the proposed order granting final approval of the class action settlement attached hereto as Exhibit A.

Dated:  December 10, 2025

**THIERMAN BUCK**

*/s/ Leah L. Jones*
Joshua D. Buck, Nev. Bar No. 12187
Leah L. Jones, Nev. Bar No. 13161
325 W. Liberty St.
Reno, Nevada 89501

*Attorneys for Plaintiff and all others similarly situated*

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com